May it please the Court, my name is Stephanie Thorpe, attorney for Petitioner Mariana Perez Urbaneja. I'd like to reserve two minutes for rebuttal. There are three arguments in this case. The first is that the adverse credibility finding is not supported by substantial evidence. Second is that the Board's sole basis for denying relief was the adverse credibility finding and it gave no consideration to the record. And the third is that the Board's adverse credibility finding is not only not supported by substantial evidence but considers a factor that the immigration judge did not in its adverse credibility finding. Ms. Perez asked this Court to remand the proceedings back to the Board and that remand is a proper remedy regardless of the finding on the adverse credibility finding. Counsel, I wanted to ask you about what I think was the second point in your list, which is whether the Board considered all of the evidence. We have at least one or two cases that say that we presume that the Board considered everything that was there, even if it doesn't mention a particular thing. And in this case of AR3, the Board begins the dispositive part by saying, following consideration of the record, and then it goes on to state a conclusion. Why would the presumption that they considered the whole record not apply here? Because the Board merely affirmed the immigration judge's adverse credibility finding. It specifically states, we affirm the immigration judge's adverse credibility finding and didn't move beyond adverse credibility, where to the Board was briefed the issues of past persecution and well-found inferior nexus. And in addition, this Court... But logically, if the Board has one ground for deciding that the person is not entitled to relief, why does it have to go beyond that? I mean, it could, but it doesn't have to go to alternative theories, does it? Well, it does have to consider the documentary evidence, because relief such as withholding of removal and protection under the Torture Convention can be granted on documentary evidence alone, which this Court has held in Kamalthus, which was a Torture Convention claim, and El Harvey, which was a withholding of removal grant, specifically on documentary evidence. And in El Harvey, there was already an adverse credibility finding, but the documentary evidence supported the granting of that relief. And in this case, the Board dismissed both of those claims based solely on adverse credibility. It stated that because of the adverse credibility finding, the petitioner was not eligible for those, or was not granted those. So you're reading the statement, following consideration of the record, we are not persuaded that the immigration judge's findings of fact, including his assessment of the respondent's credibility, have been shown to be clearly erroneous. You're construing that as solely addressing adverse credibility? That's not what it seems to say. That is because on the next page, I believe it's 004, they start with, because they've affirmed the immigration judge's adverse credibility finding, it follows that withholding cannot be given. But that's not inconsistent with Judge Graber's position, saying that if adverse, if they find her not credible, you're saying that even if she is not credible, you look to the documents, and the documents standing alone would overcome her lack of credibility. Is that your argument? That's our argument. What about those documents? Let's assume the BIA looked to those documents, if we grant that for the moment. What in those documents, standing alone, would lead one to conclude that she faced future persecution? There is both specific and general documentary evidence in the record. There's a blacklist there? There's an account of the carjacking, where there's virtually no information in there about persecution, other than these thugs mentioned Chavez, I guess, is that right? Yes, and they referred to her as, I believe, the teacher or professor, which was her name to the Commando Mesantas when she would cross through the borders as well. I'm sorry. As the professor or professor blonde, and the kidnappers referenced the same nicknames, which were professor or teacher during the course of the kidnapping. And remind me what the significance of that is? That was the culminating event. They had identified her, she had been harassed each time she had gone into, and threatened and assaulted was her testimony every time she had gone into the cities to do her work. The kidnappers made reference to the same nicknames that those guards, when she would go in and out of the cities, used for her, indicating that they were connected to them. Okay, but that's based on her testimony. Correct. Which the immigration judge and the BIA affirmed said was not credible. Correct. I'm just trying to understand, do we assume that we sustain the lack of credibility, and we have to look and determine whether the documents on their face would compel, absent some explanation by the BIA as to why they don't, would compel a determination of future persecution? Yes, our argument is that it should be remanded so the board can review the documentary evidence, even regardless of an adverse credibility finding. And in the documentary evidence are numerous letters about her political activity, her involvement in her work in Right Hand 21, which was the group she worked for as a sociologist. Letters from, I'm sorry? Well, I've looked at the documents. I'm just, you know, I was trying to extract from them, you know, the kind of information that would make me feel quite uncomfortable that the BIA hadn't addressed them. And I'm just wondering if sending it back to the BIA to look through the documents, assuming that she's not otherwise credible, what would that mean? Well, the letters do refer to, specifically the letter from the Carmelite sister from Right Hand 21, does refer to the risks and the dangers that she faced. Also, there are, there is the task on list, which includes her name and her vote in that referendum. And also the key at AR 382 shows how that list was used to identify opposition versus those who were for the Chavez government. And also an explanation of the software, which was how it would divide up and identify voters according to how they voted on that list and their alliance with the government and whether some should have been subject to further review. In addition to that, there's also the general evidence regarding the use of the list as a blacklist and how the Chavez regime has used the Mesanta as a kind of high tech way to identify its opposers and that its attitude toward political opposition, human rights workers, in the State Department reports it shows that Chavez regime uses attacks, intimidation. There was even an instance in one of the reports about that a journalist was killed for speaking out and being critical of the Chavez regime and that is at the record in 441. I wanted to just ask, I think your first point is the adverse credibility is not supported by the record. Could you comment on that? What is there that would focus us on your argument that would help us decide? The adverse credibility finding, there are three bases in this case for the adverse credibility finding from both courts. The first is that Ms. Perez was not harmed after 2004 before she fled in 2006. The second was she made several return trips to Venezuela before fleeing and the third was that she didn't vote against Chavez in 2006 from within the United States. Now the immigration judge references the lack of harm after 2004 and the fact that she didn't vote in 2006 as a basis for his adverse credibility finding and yet he offers no explanation as to why that would undermine the veracity of her claim. The Real ID Act has pointed out areas where the judge should look such as inconsistency, demeanor, evasiveness and the immigration judge simply stated these things as the basis for adverse credibility but didn't go into any explanation. And this court has found in Zahidi that specific and cogent reasons must be given for the adverse credibility finding. In addition, as far as the fact that she wasn't harmed in 2004, she gave the explanation that she wasn't harmed because out of fear she had quit her job, she had ceased political activity and was no longer involved in any marches or protests and that was when she became a student and upon graduation before when looking for a job as a sociologist, that is when she chose to flee in 2006, a month prior to the re-election of Chavez. This court has found that applicants ceasing the activity that got them targeted is not a basis to find that they will be safe in that country and that's an edu. Well, it may not be a basis to find that they would be safe but why can't it bear on the question of the believability of fear? If someone says I'm terrified but I stayed around for four more years after I started to become terrified, why doesn't that bear on the believability of their fear as distinct from assuming they're true, whether they can be safe? It's kind of a different question, I think. They are different questions with the reasonableness of a well-founded fear versus the believability of a person's claim and the issue in this case is that there's no reason given why that's not believable. The immigration judge goes right into the objective component and he seems to be using things for adverse credibility which commonly are used for the objective component of reasonableness but his use of it as adverse credibility, it is a different standard and he doesn't explain at all why those things would undermine her veracity or even address the reason that she gave for choosing to leave two years after she had stopped her political activity. Counsel, you've exceeded your time but we'll give you a minute for rebuttal when the time comes. We'll hear from the government next. Good morning. May it please the court. My name is Jocelyn Wright. I'm here on behalf of Respondent United States Attorney General. Judge Graber, I believe you hit the point on the head that the government was trying to make with its brief. Petitioner's claim to the immigration court was that she feared persecution and retribution for her past political activities. The judge took this claim and then looked at the evidence and said, well, according to the evidence, the last political activity or participation that you had was in 2004. You remained in Venezuela until 2006 when you left in August of 2006. During those two years, you voluntarily ceased any political activity. You didn't have any kind of harm against you. We do have cases that say that I think that a person does not have to give up their right to political activity in the name of safety and that if they do that and that's the reason that they stop their activity, that doesn't necessarily mean that they weren't persecuted on account of that activity earlier. That's true, Your Honor. But then the immigration judge also went on to consider the fact that once she reached the safety of the United States in 2006, she didn't vote at the Venezuelan elections, even though that ability was available to her here. And that failure was indicative of her commitment, I guess, to continued political participation in the future. I had one concern about the decision of both the immigration judge and the BIA, and if you would address this, it would be helpful to me. The agency addressed in some detail the level of political activity and some of the other explanations that the petitioner gave, but one thing they did not address at all, as far as I could see, was the explanation, however brief it was, that she stayed because she wanted to finish her university degree. And there was an answer to a leading question where she said yes, that was the reason that she stayed. And then, of course, her diploma is in the records, showing that she did, in fact, receive her degree at a certain time. So what do we do with what appears to be the fact that the agency did not come to grips with one of her explanations for staying? Well, I think the immigration judge, when he said that the fact remains that you were there for two years after the pivotal, the culminating event, as Petitioner's Counsel put it, two years after that, and nothing happened to you during that entire time, is relevant to the inquiry of how believable it is if you're going back. Okay, you're saying it doesn't matter what her explanation was, because he said, well, you couldn't have been that scared because other things were more important to you besides leaving. Is that basically your position then? Because they definitely don't mention this one explanation. That's correct, Your Honor. I thought you were suggesting that she, whatever her reason, that the objective fact is that she wasn't subjected to any kind of threats or harm during the two years. Well, that is what the immigration judge determined. But she gave up her political activity. The voluntary cessation of her political activities and her failure to take them up again once she reached the safety of the United States was an important and significant indication to the immigration judge that went to whether or not she really would be persecuted in the future. Is that right? Somebody has to come here and be politically active against the government? Well, no, but her claim was that she was a very strong opponent of Chavez and that she participated in 20 to 30 marches. So what's she supposed to do in the United States? Well, one of the explanations that she proffered for staying in Venezuela was that she wanted to see what the 2006 elections was, how they were going to turn out. But the fact is that she left one month before the elections actually came. She didn't state a vote to make sure that her vote ensured that there was a changeover of leadership. She came to the United States instead. When she was here, even though she could vote, she still didn't do that. And so, again, the immigration judge said, Your claim, and I quote, is it is the respondent's position that if she had to return to Venezuela, she would be at great risk because of her previous political activity. Well, she had the previous political activity that stopped in 2004, but between 2004 and 2006, there was no harm that came to her on account of those activities. And she still didn't take them up afterwards, and so there was no indication that it would happen in the future. On the documentation, you've heard counsel's argument. The VIA does not explicitly say that they've looked at the documents. It simply says in consideration of the record. There's nothing in their opinion that would indicate that they actually consider the documents. So how do we – is it the rule, do you think, in the circuit that all they have to do is put in a boilerplate statement in consideration of the record and that's enough? And even if there is information like a blacklist in the record or the evidence, the kind of evidence that counsel has summarized, that we should just assume that the VIA has looked at those documents? That they don't talk about it? No, they don't talk about it. And all they say is, she said on the carryover, the paragraph on the second page of their opinion, they do focus on the adverse credibility. That's correct, Your Honor. And that, I think, is – I think the presumption of regularity does apply here. Well, what? The board's – So what you're saying is that somebody may put on the form matrix for a VIA opinion, simply always be sure to put in consideration of the record, and you don't really have to go look at the record. Nobody's going to really make sure that they do. That's not what I'm saying. We're supposed to presume that that's sufficient. That's not what I'm saying, Your Honor. But I am saying that when the board says that we did consider the record but we're going to limit our dispositive ruling to the adverse credibility determination, I think – Where do they say that? Well, as you said in the next paragraph, when they say since we affirm based on the immigration judge's determination, it didn't need to discuss the merits of the documents because the adverse credibility determination was sufficient. And so to the extent that the documents – Well, now, wait a minute. Let's suppose that they didn't find aspects of her claim – the aspects that we're talking about credible because she didn't go back or she didn't go through the political activity. But the documentation showed that notwithstanding whether that was believable as to why she went back or whatever, her name was on a blacklist. And let's just suppose that the country report said anybody who shows up on a blacklist can reasonably be expected to be targeted by the Chavez regime. Now, let's suppose the documents said that. Would the adverse credibility determination excuse the BIA from looking to those documents to determine whether or not somebody could be persecuted even to the level of being tortured, subjected to a violation of CAT? Under this circuit's law in Comaltas, it doesn't excuse the board from considering those documents with respect to its determination on the CAT claim. And I will address that fully a little bit later. You can address it now. But with respect to whether or not it's required to do it in terms of the merits of the claim, certainly, as Judge Graber pointed out, it might have been advisable for the board under the terms of your hypothetical where the State Department report would say that for the board to go ahead and make an alternative ruling on the merits. But in this case, the documents simply didn't say that. It said that her name is on the Tascón list, but at the same time, so are 12 million other voters in Venezuela. And so that goes to the likelihood, assuming that the merits of her claim that she does fear going back was accepted as true. But in this case, the immigration judge said, I don't believe that you have a fear of going back to be persecuted on account of political opinion or your political activities, and that is sufficient for me to deny your claim. I'm sorry, the board said that on affirming the immigration judge's decision. The immigration judge did go on to make alternative rulings, but the board didn't say anything about those rulings. And so this court's review is limited to the adverse credibility determination. Why not remand to have the board specifically say it looked at the documents? Because I don't think that it would serve a useful purpose. It would be futile. Because at this point, we would make the same arguments. Once it got back up to this court, after the board had clarified, we did look at the documents. You're assuming that their decision would have been the same, even if they looked at the documents. Because I'm assuming that they did look at the documents under the presumption of regularity, Your Honor. Before my time runs out, if I could take a little time to address the Catt claim. Briefly. I just wanted to advise the court that, first of all, the adverse credibility, her facts that she relied on in the support of her asylum, as well as her Catt claim, are the same. And so to the extent that the board said there's no fear there, there's no objective fear, I think that applies equally to the torture convention claim. And she hasn't demonstrated a clear probability of torture, not just persecution, but torture on account of her political activities or on account of any basis, because the torture convention doesn't require a nexus. And so to that extent, I think the board determination should be affirmed. Thank you. Thank you, counsel. Ms. Thorpe, you may have a minute for rebuttal. Yes, Your Honor. Thank you. In regard to the fact that the immigration judge did or the board did not address any explanation given by a petitioner as to why she stayed, counsel had said that the reasoning was not as important. However, the reasoning, under this court's precedent, is the sole focus of why someone remains in a country where they are now claiming persecution. And the reasoning, regardless of the return trips or time to remain in the country, can be the explanation for why the person is still granted relief in Diomese v. Job. I'm sorry, Diomese v. Job and Korone. Both of those were years where the person had returned, but the explanation was what the court focused on. In Diomese, it was the person had returned to assist family members who had been arrested, and the court found that that did not undermine the person's fear. Additionally, in regard to the cat claim, Camalthus is right on point with this case. As Camalthus has said, that we are not comfortable allowing an adverse credibility finding to wash over a cat claim. And the court also found that the board had plainly, in quotes, over-relied on the previous adverse credibility finding in that case. Our argument is that the same thing has happened here. The board took the adverse credibility finding and ran with it. There is no indication that documentary evidence were reviewed, and they would have found her undeserving of cat regardless. Counsel, thank you very much. We appreciate the arguments of both parties. The case is submitted.
judges: Marshall, Graber, Fisher